UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Ian J.,[1]<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | Civil Action No. 26-10521-JCB |

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REVERSE AND REMAND AND DEFENDANT'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION
[Docket Nos. 13, 14]

October 5, 2026

Boal, M.J.

This is an action for judicial review of a final decision by Frank Bisignano, the Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's application for Disability Insurance Benefits ("DIB"). Plaintiff asserts that the April 22, 2025, decision of an administrative law judge ("ALJ") is in error and moves to reverse and remand the decision for further proceedings. Docket No. 13. The Commissioner, in turn, has moved for an order affirming his decision. Docket No. 14. For the following reasons, this Court grants in part the Plaintiff's motion to reverse and remand and denies the Commissioner's motion to affirm his

[1] Plaintiff's name is partially redacted in accordance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

decision. This case is remanded for further proceedings consistent with this opinion.[2]

I. FACTS AND PROCEDURAL HISTORY

A. Procedural History

On February 8, 2023, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act ("SSA") alleging disability since February 1, 2020. Administrative Record ("AR") 178-179. After his claim was denied initially and on reconsideration, on March 13, 2025, ALJ Sujata Rodgers held a telephonic hearing at which an impartial vocational expert and Plaintiff, represented by counsel, appeared and testified. AR 45, 53, 14-33. At the hearing, the Plaintiff amended his alleged onset date to September 13, 2021, his 50th birthday. AR 18, 57. On April 22, 2025, the ALJ found that Plaintiff was not disabled from the alleged onset date through March 31, 2025, the date last insured. (AR 66). The Appeals Council denied Plaintiff's request for review, (AR 1-3), making ALJ Rodgers' determination the Commissioner's final decision for purposes of judicial review. See 42 U.S.C. § 405(g).

Plaintiff filed this action on February 2, 2026. Docket No. 1. On May 29, 2026, Plaintiff filed a motion to reverse and remand. Docket No. 13. The government filed a motion for an order affirming the Commissioner's decision on June 16, 2026. Docket No. 14. The Plaintiff filed a reply on June 30, 2026. Docket No. 16.

B. Medical Evidence

A lumbar MRI performed on September 19, 2019 showed lumbar scoliosis convex to the left; a central disc bulge at L5-S1; moderate degenerative changes of the L5-S1 facet joints bilaterally, unchanged; a central disc bulge at L4-L5; a 2 mm retrolisthesis of L4 and L5; reactive

[2] On May 7, 2026, the parties consented to the jurisdiction of the undersigned for all purposes. Docket No. 12.

degenerative endplate changes at L4-L5; minor central disc bulges at L3-L4 and L2-L3; and complete visualization of a left renal cyst. AR 261.

On July 27, 2022, Plaintiff attended a physical therapy evaluation at Cape Cod Hospital Rehab Services. AR 298. He reported recurring debilitating episodes of back pain for several years, which caused him to be immobilized for several days. Id. Plaintiff tried epidural injections two years prior but they did not help. Id. Plaintiff had been diagnosed recently with diabetes mellitus and had been actively trying to lose weight. Id.

On examination, Plaintiff had limited lumbar range of motion and limited strength, with a positive bilateral Thomas test.[3] AR 300-301. The therapist noted that Plaintiff would benefit from physical therapy to reduce lower back spasms, initiate gentle back mobility, and lower extremity flexibility program as well as offer general nutrition counseling to improve his BMI and overall health. AR 301. She also noted that Plaintiff's prognosis was good. Id.

Plaintiff attended physical therapy sessions on August 10, September 9, September 26, and October 26, 2022. AR 286-297. On August 10, Plaintiff reported no flareups since beginning physical therapy. AR 295. The therapist noted that Plaintiff had very tight hamstrings, poor pelvic mobility, and poor segmental lumbar mobility affecting his tolerance with activities of daily living. AR 296.

On September 9, 2022, Plaintiff reported a recent back flare up but that he was only "out" for two days instead of his typical seven days of bed rest. AR 292. The therapist noted that Plaintiff had improved lumbar flexion and reduced pain. AR 293.

On September 26, 2022, Plaintiff reported that his back was really tender and that he was

---

[3] A Thomas Test is a "maneuver used to determine tightness of the iliopsoas muscle." Stedman's Medical Dictionary (7th ed. 2012) at 1673.

not "bouncing back as quickly as I normally do." AR 289. On October 26, 2022, Plaintiff reported that he had lost weight and had been able to move better despite increase in localized lumbar pain. AR 286-287.

A November 22, 2022, lumbar MRI showed mild lumbar levoscoliosis and mild lumbar spondylosis; lower lumbar facet arthropathy greatest at L5-S1; multiple bulging discs; and indeterminant 2.6 cm T2 hyperintense left upper pole renal lesion, possibly a renal cyst. AR 266.

On February 13, 2023, Plaintiff returned to Cape Cod Hospital Rehab Services for persistent lower back pain. AR 277, 283. His most recent MRI was consistent with disc bulges. AR 277. Plaintiff reported needing assistance for lifting, carrying, and most activities of daily living and that he could only stand or walk for 20 minutes at a time. AR 278. On examination, his lumbar range of motion was impaired. AR 280.

During the relevant time period, Plaintiff has been noted to have a diagnosis of morbid obesity. See, e.g., AR 333, 335, 338, 341, 344, 351. He has been prescribed Trulicity and Jardiance. See AR 344, 348.

C. Opinion Evidence

On December 9, 2023, Dr. Papa Kaku Badoe performed a consultative examination at the request of the state agency. AR 382-388. Plaintiff reported back pain since 2013, which was 7-8/10 in severity. AR 382. He had back injections that did not help. Id. Plaintiff was able to get on and off the exam table and perform tandem walking, but could not walk on heels "because of fused hip" and could not walk on his toes. AR 384. He was also "not able to squat and rise from that position with ease." AR 385. On examination, Dr. Badoe noted lumbar spasm and tenderness, a positive straight leg raising sign on the left, and lumbar and ankle limited range of motion. AR 387.

Dr. Badoe opined that Plaintiff could sit frequently but needed to move after an hour or so because of pain; could stand frequently for an hour after which pain supervenes; could walk frequently for about 100 feet before pain sets in frequently; and could lift and carry 15 pounds on the left and right side. AR 387. Lumbar x-rays attached to Dr. Badoe's exam are dated December 11, 2023, and showed mild degenerative changes of the lumbar spine without traumatic malalignment or fracture. AR 389. The study also noted that "[i]f there is persistent pain despite conservative management, consider repeat MR imaging." Id.

On January 9, 2024, state agency consultant Dr. Alice Truong opined that Plaintiff could do light work with occasional postural limitations. AR 41-42. She also opined that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; and could stand and/or walk and sit for six hours in an eight-hour workday. AR 41.

On reconsideration, state agency consultant Dr. Usama Khayyal largely agreed with Dr. Truong's assessment, except that Plaintiff could frequently climb ramps and stairs, balance, kneel, crouch, and crawl. AR 49-50.

On August 13, 2024, Plaintiff's treating physician, Dr. Alexis Tressor, opined that Plaintiff could sit and stand one hour in an eight-hour working day. AR 460. She also opined that Plaintiff would need hourly unscheduled breaks; would be off task 25% or more of the workday; would likely be absent from work more than four days per month; and would be incapable of even "low stress work." Id. She indicated that she had seen Plaintiff every three months for one to two years, during which he had longstanding low back pain without improvement. Id.

D. Hearing Testimony

Plaintiff was 53 years old at the time of the hearing. AR 19. He testified that he was six

feet tall and weighed around 300 pounds. AR 20. He has full custody of his children, ages 12 and 13, and lives with them and his mother. AR 20, 21. He does dishes and throws the dirty laundry down the stairs for when his son gets home. AR 23. His 13-year old son also helps with shopping and cooking. AR 23-24.

Plaintiff testified that he has constant lower back pain and has difficulties standing or walking for prolonged periods of time. AR 21, 23. He can stand, walk, or sit for 20 to 30 minutes before he has to change positions. AR 23. He also testified that he can lift no more than a gallon of milk. Id. He uses a cane when he goes out. AR 24.

Plaintiff testified that he tried steroid injections for his back pain but they did not help. AR 21-22. He takes aspirin and an anti-inflammatory medication every day. AR 22. He also takes Mounjaro for his diabetes and to help with weight loss. Id.

## II. STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. See 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (citations omitted). The Supreme Court has defined substantial evidence as "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d

15, 16 (1st Cir. 1996) (citation omitted). The ALJ's decision is "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). However, if a court reverses the Commissioner's decision but there is no clear entitlement to benefits on the basis of the record before the court, the court must remand for additional proceedings. Seavey v. Barnhart, 276 F.3d 1, 11-12 (1st Cir. 2001) ("When an agency has not considered all relevant factors in taking action, or has provided insufficient explanation for its action, the reviewing court should ordinarily remand the case to the agency.") (citation omitted). In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## III. DISCUSSION

### A. Disability Standard And The Commissioner's Decision

The Social Security Act (the "Act") defines disability, in part, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is considered disabled under the Act

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for her, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). See generally Bowen v. Yuckert, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically

> considered not disabled.
>
> Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits his or her physical or mental capacity to perform basic work-related functions." If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.
>
> . . . .
>
> Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.
>
> Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

The ALJ concluded, following the Commissioner's five-step sequential disability evaluation, that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff meets the insured status requirements of the SSA through March 31, 2025, and he had not performed substantial gainful activity since his alleged amended onset date of September 13, 2021. AR 59-60.

At step two, the ALJ found that Plaintiff had the following severe impairments: a spinal disorder and obesity. AR 60. The ALJ also found that the Plaintiff had two nonsevere impairments: hypertension and diabetes. Id.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, and 404.1526). Id.

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) except the claimant "can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds, he can sit, stand and walk for 6 hours each in an 8-hour workday, he can occasionally climb ramps and stairs, never climb ladders ropes and scaffolds, and occasionally balance (uneven/slippery surfaces), stoop, kneel, crouch and crawl he must avoid concentrated exposure to hazards, such as heavy machinery, moving mechanical parts and unprotected heights and he must avoid concentrated exposure to vibration (jackhammer)." AR 61.

At step five, the ALJ concluded that Plaintiff was not disabled because he could perform jobs existing in significant numbers in the national economy. AR 64-66.

B. Plaintiff's Challenges To The ALJ's Decision

Plaintiff challenges the ALJ's decision on three grounds. First, he argues that the ALJ ignored important portions of Dr. Badoe's opinion, rendering his findings unsupported by substantial evidence. Docket No. 13-1 at 7-11. Second, he argues that the ALJ failed to consider the substantial consistency between Dr. Badoe and Dr. Tressor's opinions. Id. at 11-12. Finally, he argues that the ALJ failed to properly consider the effects of Plaintiff's obesity at step three and in deciding Plaintiff's RFC, in violation of SSR 19-2p. Id. at 12-16.

1. Dr. Badoe's Opinion

First, the Plaintiff challenges the weight the ALJ assigned to Dr. Badoe's opinion. See id. at 7-11. ALJs must consider several factors in determining the persuasiveness of medical opinions: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 404.1520(c). "The most important factors to be considered when the Commissioner evaluates persuasiveness are supportability and consistency;

these are usually the only factors the ALJ is required to articulate." Devine v. Kijakazi, 627 F.Supp.3d 10, 23 (D. Mass. 2022) (citation omitted).

In describing Dr. Badoe's opinion, the ALJ first stated that Dr. Badoe, "noted lumbar spasm and lumbar tenderness, *but that the remainder of the claimant's physical examination was within normal limits*." AR 63 (emphasis added). Later, the ALJ found that Dr. Badoe's opinion was not persuasive:

> because it is inconsistent with his own physical examination, which showed only lumbar tenderness and a lumbar spasm, with no other abnormality noted. It is also inconsistent with a lumbar MRI which he ordered, which was basically normal with only some mild degenerative changes. His opinion seems based solely on the claimant's subjective allegations and is not supported by any objective clinical findings.

AR 64. The ALJ's reasons for finding Dr. Badoe's opinion not persuasive do not bear scrutiny. Contrary to the ALJ's statements, Dr. Badoe's examination did not show only lumbar tenderness and lumbar spasm. In addition to those findings, Dr. Badoe noted that Plaintiff could not walk on heels "because of fused hip" and he could not walk on his toes; that Plaintiff had a limited lumbar and ankle range of motion; that Plaintiff was not able to squat and rise from that position with ease; and that Plaintiff had a positive straight leg raising sign on the left. AR 384, 387.

In addition, Dr. Badoe did not order a lumbar MRI. Rather, it appears that lumbar X-rays dated December 11, 2023 were attached to Dr. Badoe's exam report. See AR 389. The Commissioner acknowledges the inaccuracies in the ALJ's evaluation of Dr. Badoe's opinion, but argues that the ALJ's decision is nevertheless supported by substantial evidence. See Docket No. 15 at 9, 11. This Court disagrees. The ALJ's inaccuracies in describing Dr. Badoe's report and opinion undermine the ALJ's assessment of Dr. Badoe's opinion as well as her RFC assessment and therefore her decision is not supported by substantial evidence.

2. Consistency Between Dr. Badoe's and Dr. Tressor's Opinions

The Plaintiff also argues that the ALJ failed to consider the consistency between the opinions of Dr. Badoe and Dr. Tressor, "which the ALJ may have done if she accurately read Dr. [Badoe's] opinion." Docket No. 13-1 at 11. The consistency factor calls for a comparison between the medical opinions and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 416.920c(c)(2). While the ALJ is required to consider the consistency of medical opinions in relation to the record as a whole, she is not required to compare medical opinions with each other. See Laura K. v. Commissioner of Social Sec., No. 23-CV-641, 2025 WL 339006, at *5 (W.D.N.Y. Jan. 30, 2025) (citations omitted). Accordingly, this Court finds no error in this respect.

3. ALJ's Evaluation Of Obesity

Finally, the Plaintiff argues that the ALJ failed to consider the effects of his obesity at step three and in deciding his RFC. Docket No. 13-1 at 12-16. "[T]he effects of obesity combined with other impairments can be greater than the effects of each of the impairments considered separately." SSR 19-2P, 2019 WL 2374244, at *2 (May 20, 2019). An ALJ, therefore, must consider an applicant's obesity at various steps of the sequential evaluation process. See id. at *3-4. "If the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities, we find that the impairment(s) is severe." Id. at *3. Obesity may also be a factor in determining whether a claimant has an impairment that meets or equals a listed impairment, but the obesity must actually impose a limitation on the claimant. Id. at *4. Finally, the ALJ must consider the limiting effects of obesity when assessing a person's RFC. Id.

The ALJ found that Plaintiff's obesity was a severe impairment at step two but did not

otherwise reference obesity at step three or four. Nothing in the medical record, opinion evidence, or testimony, however, attributed specific functional limitations to Plaintiff's obesity in addition to or different from the functional limitations associated with his spinal disorder and back pain. There is therefore nothing in the record to indicate that Plaintiff's obesity causes functional limitations that were not considered by the ALJ. Accordingly, this Court finds that the ALJ's failure to further discuss obesity in her opinion is not error under the circumstances of this case.

## IV. ORDER

For the foregoing reasons, this Court grants in part the Plaintiff's motion to reverse and remand and denies the Commissioner's motion to affirm his decision. This case is remanded for further proceedings consistent with this opinion.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge